JS 44 (Rev. 12/12)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS
T.L., K.L., and K.L.

**DEFENDANTS**
Lower Merion School District

**15        885**

**(b)** County of Residence of First Listed Plaintiff  Montgomery County, Pennsylvania
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant  Montgomery County, Pennsylvania
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE:    IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
David G. C. Arnold, Esquire
920 Matsonford Road, Suite 106
West Conshohocken, Pennsylvania 19428
(610) 397-0722

Attorneys *(If Known)*
Amy T. Brooks, Esquire
Wisler Pearlstine, LLP
460 Norristown Road-Suite 110
Blus Bell, Pennsylvania 19422
(610) 825-8400

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

☐ 1  U.S. Government Plaintiff

☒ 3  Federal Question *(U.S. Government Not a Party)*

☐ 2  U.S. Government Defendant

☐ 4  Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 365 Personal Injury - | ☐ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☐ 400 State Reapportionment |
| ☐ 130 Miller Act | ☐ 315 Airplane Product | Product Liability | | | ☐ 410 Antitrust |
| ☐ 140 Negotiable Instrument | Liability | ☐ 367 Health Care/ | | | ☐ 430 Banks and Banking |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 320 Assault, Libel & Slander | Pharmaceutical Personal Injury | | **PROPERTY RIGHTS** | ☐ 450 Commerce |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers' | Product Liability | | ☐ 820 Copyrights | ☐ 460 Deportation |
| ☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans) | Liability | ☐ 368 Asbestos Personal Injury Product | | ☐ 830 Patent ☐ 840 Trademark | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| | ☐ 340 Marine | Liability | | | ☐ 480 Consumer Credit |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 345 Marine Product Liability | **PERSONAL PROPERTY** | **LABOR** | **SOCIAL SECURITY** | ☐ 490 Cable/Sat TV |
| ☐ 160 Stockholders' Suits | ☐ 350 Motor Vehicle | ☐ 370 Other Fraud | ☐ 710 Fair Labor Standards Act | ☐ 861 HIA (1395ff) | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 190 Other Contract | ☐ 355 Motor Vehicle Product Liability | ☐ 371 Truth in Lending | ☐ 720 Labor/Management Relations | ☐ 862 Black Lung (923) ☐ 863 DIWC/DIWW (405(g)) | ☐ 890 Other Statutory Actions |
| ☐ 195 Contract Product Liability | ☐ 360 Other Personal | ☐ 380 Other Personal Property Damage | ☐ 740 Railway Labor Act | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
| ☐ 196 Franchise | Injury | ☐ 385 Property Damage Product Liability | ☐ 751 Family and Medical Leave Act | ☐ 865 RSI (405(g)) | ☐ 893 Environmental Matters |
| | ☐ 362 Personal Injury - Medical Malpractice | | ☐ 790 Other Labor Litigation | | ☐ 895 Freedom of Information Act |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 791 Employee Retirement Income Security Act | **FEDERAL TAX SUITS** | ☐ 896 Arbitration |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights | **Habeas Corpus:** | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| ☐ 220 Foreclosure | ☐ 441 Voting | ☐ 463 Alien Detainee | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 950 Constitutionality of State Statutes |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment | ☐ 510 Motions to Vacate Sentence | | | |
| ☐ 240 Torts to Land | ☐ 443 Housing/ Accommodations | ☐ 530 General | | | |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 535 Death Penalty | **IMMIGRATION** | | |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | **Other:** ☐ 540 Mandamus & Other | ☐ 462 Naturalization Application ☐ 465 Other Immigration Actions | | |
| | ☒ 448 Education | ☐ 550 Civil Rights ☐ 555 Prison Condition ☐ 560 Civil Detainee - Conditions of Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

☒ 1 Original Proceeding
☐ 2 Removed from State Court
☐ 3 Remanded from Appellate Court
☐ 4 Reinstated or Reopened
☐ 5 Transferred from Another District *(specify)*
☐ 6 Multidistrict Litigation

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
20 U.S.C. § 1415, 29 U.S.C. § 794, 28 U.S.C. § 1331

Brief description of cause:
This is an appeal from a Hearing Officer's Decision in a Special Education Due Process Proceeding

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.

DEMAND $ Reimbursement of Educational and Transportation Expenses

CHECK YES only if demanded in complaint:
JURY DEMAND:    ☐ Yes    ☐ No

## VIII. RELATED CASE(S) IF ANY
*(See instructions:)*

JUDGE _____    DOCKET NUMBER _____

DATE
Febrauary 20, 2015

SIGNATURE OF ATTORNEY OF RECORD
*David G. C. Arnold*

FEB 20 2015

| FOR OFFICE USE ONLY | | | | |
|---|---|---|---|---|
| RECEIPT # | AMOUNT | APPLYING IFP | JUDGE | MAG. JUDGE |

JS 44 Reverse (Rev. 12/12)

# INSTRUCTIONS FOR ATTORNEYS COMPLETING CIVIL COVER SHEET FORM JS 44

## Authority For Civil Cover Sheet

The JS 44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleading or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently, a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. The attorney filing a case should complete the form as follows:

**I. (a)**    **Plaintiffs-Defendants.** Enter names (last, first, middle initial) of plaintiff and defendant. If the plaintiff or defendant is a government agency, use only the full name or standard abbreviations. If the plaintiff or defendant is an official within a government agency, identify first the agency and then the official, giving both name and title.

    **(b)**    **County of Residence.** For each civil case filed, except U.S. plaintiff cases, enter the name of the county where the first listed plaintiff resides at the time of filing. In U.S. plaintiff cases, enter the name of the county in which the first listed defendant resides at the time of filing. (NOTE: In land condemnation cases, the county of residence of the "defendant" is the location of the tract of land involved.)

    **(c)**    **Attorneys.** Enter the firm name, address, telephone number, and attorney of record. If there are several attorneys, list them on an attachment, noting in this section "(see attachment)".

**II.**    **Jurisdiction.** The basis of jurisdiction is set forth under Rule 8(a), F.R.Cv.P., which requires that jurisdictions be shown in pleadings. Place an "X" in one of the boxes. If there is more than one basis of jurisdiction, precedence is given in the order shown below.
United States plaintiff. (1) Jurisdiction based on 28 U.S.C. 1345 and 1348. Suits by agencies and officers of the United States are included here.
United States defendant. (2) When the plaintiff is suing the United States, its officers or agencies, place an "X" in this box.
Federal question. (3) This refers to suits under 28 U.S.C. 1331, where jurisdiction arises under the Constitution of the United States, an amendment to the Constitution, an act of Congress or a treaty of the United States. In cases where the U.S. is a party, the U.S. plaintiff or defendant code takes precedence, and box 1 or 2 should be marked.
Diversity of citizenship. (4) This refers to suits under 28 U.S.C. 1332, where parties are citizens of different states. When Box 4 is checked, the citizenship of the different parties must be checked. (See Section III below; **NOTE: federal question actions take precedence over diversity cases.**)

**III.**    **Residence (citizenship) of Principal Parties.** This section of the JS 44 is to be completed if diversity of citizenship was indicated above. Mark this section for each principal party.

**IV.**    **Nature of Suit.** Place an "X" in the appropriate box. If the nature of suit cannot be determined, be sure the cause of action, in Section VI below, is sufficient to enable the deputy clerk or the statistical clerk(s) in the Administrative Office to determine the nature of suit. If the cause fits more than one nature of suit, select the most definitive.

**V.**    **Origin.** Place an "X" in one of the six boxes.
Original Proceedings. (1) Cases which originate in the United States district courts.
Removed from State Court. (2) Proceedings initiated in state courts may be removed to the district courts under Title 28 U.S.C., Section 1441. When the petition for removal is granted, check this box.
Remanded from Appellate Court. (3) Check this box for cases remanded to the district court for further action. Use the date of remand as the filing date.
Reinstated or Reopened. (4) Check this box for cases reinstated or reopened in the district court. Use the reopening date as the filing date.
Transferred from Another District. (5) For cases transferred under Title 28 U.S.C. Section 1404(a). Do not use this for within district transfers or multidistrict litigation transfers.
Multidistrict Litigation. (6) Check this box when a multidistrict case is transferred into the district under authority of Title 28 U.S.C. Section 1407. When this box is checked, do not check (5) above.

**VI.**    **Cause of Action.** Report the civil statute directly related to the cause of action and give a brief description of the cause. **Do not cite jurisdictional statutes unless diversity.** Example: U.S. Civil Statute: 47 USC 553 Brief Description: Unauthorized reception of cable service

**VII.**    **Requested in Complaint.** Class Action. Place an "X" in this box if you are filing a class action under Rule 23, F.R.Cv.P.
Demand. In this space enter the actual dollar amount being demanded or indicate other demand, such as a preliminary injunction.
Jury Demand. Check the appropriate box to indicate whether or not a jury is being demanded.

**VIII.**    **Related Cases.** This section of the JS 44 is used to reference related pending cases, if any. If there are related pending cases, insert the docket numbers and the corresponding judge names for such cases.

**Date and Attorney Signature.** Date and sign the civil cover sheet.

**UNITED STATES DISTRICT COURT**

15-cv-885

FOR THE EASTERN DISTRICT OF PENNSYLVANIA — DESIGNATION FORM to be used by counsel to indicate the category of the case for the purpose of assignment to appropriate calendar.

Address of Plaintiff: Protected from Disclosure under F.R.Civ. P. 5.2 and Rule 5.1.3 of the United States District Court

Address of Defendant: 301 East Montgomery Avenue, Ardmore, Pennsylvania 19003

Place of Accident, Incident or Transaction: Lower Merion Township, Montgomery County, Pennsylvania
*(Use Reverse Side For Additional Space)*

Does this civil action involve a nongovernmental corporate party with any parent corporation and any publicly held corporation owning 10% or more of its stock?
(Attach two copies of the Disclosure Statement Form in accordance with Fed.R.Civ.P. 7.1(a))    Yes☐  No☒

Does this case involve multidistrict litigation possibilities?    Yes☐  No☒
*RELATED CASE, IF ANY:* Not Apply
Case Number: _____ Judge _____ Date Terminated: _____

Civil cases are deemed related when yes is answered to any of the following questions:

1. Is this case related to property included in an earlier numbered suit pending or within one year previously terminated action in this court?    Yes☐  No☒

2. Does this case involve the same issue of fact or grow out of the same transaction as a prior suit pending or within one year previously terminated action in this court?    Yes☐  No☒

3. Does this case involve the validity or infringement of a patent already in suit or any earlier numbered case pending or within one year previously terminated action in this court?    Yes☐  No☒

4. Is this case a second or successive habeas corpus, social security appeal, or pro se civil rights case filed by the same individual?    Yes☐  No☒

CIVIL: (Place ✔ in ONE CATEGORY ONLY)

A. *Federal Question Cases:*
1. ☐ Indemnity Contract, Marine Contract, and All Other Contracts
2. ☐ FELA
3. ☐ Jones Act-Personal Injury
4. ☐ Antitrust
5. ☐ Patent
6. ☐ Labor-Management Relations
7. ☒ Civil Rights
8. ☐ Habeas Corpus
9. ☐ Securities Act(s) Cases
10. ☐ Social Security Review Cases
11. ☐ All other Federal Question Cases
(Please specify) _____

B. *Diversity Jurisdiction Cases:*
1. ☐ Insurance Contract and Other Contracts
2. ☐ Airplane Personal Injury
3. ☐ Assault, Defamation
4. ☐ Marine Personal Injury
5. ☐ Motor Vehicle Personal Injury
6. ☐ Other Personal Injury (Please specify)
7. ☐ Products Liability
8. ☐ Products Liability — Asbestos
9. ☐ All other Diversity Cases
(Please specify) _____

**ARBITRATION CERTIFICATION**
*(Check Appropriate Category)*
I, David G. C. Arnold, counsel of record do hereby certify:
☐ Pursuant to Local Civil Rule 53.2, Section 3(c)(2), that to the best of my knowledge and belief, the damages recoverable in this civil action case exceed the sum of $150,000.00 exclusive of interest and costs;
☒ Relief other than monetary damages is sought. This is an appeal from a Due Process Proceeding

DATE: February 20, 2015    _signature_    49819
Attorney-at-Law    Attorney I.D.#
NOTE: A trial de novo will be a trial by jury only if there has been compliance with F.R.C.P. 38.

I certify that, to my knowledge, the within case is not related to any case now pending or within one year previously terminated action in this court except as noted above.

DATE: February 20, 2015    _signature_    49819
Attorney-at-Law    Attorney I.D.#

CIV. 609 (5/2012)



## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

## CASE MANAGEMENT TRACK DESIGNATION FORM

| | |
|---|---|
| T.L., a Minor, by and Through His Parents and Guardians, K.L. and K.L., and K.L. and K.L. in Their Own Right | CIVIL ACTION |
| v. | NO. |
| Lower Merion School District | |

**15    885**

In accordance with the Civil Justice Expense and Delay Reduction Plan of this court, counsel for plaintiff shall complete a Case Management Track Designation Form in all civil cases at the time of filing the complaint and serve a copy on all defendants. (See § 1:03 of the plan set forth on the reverse side of this form.) In the event that a defendant does not agree with the plaintiff regarding said designation, that defendant shall, with its first appearance, submit to the clerk of court and serve on the plaintiff and all other parties, a Case Management Track Designation Form specifying the track to which that defendant believes the case should be assigned.

## SELECT ONE OF THE FOLLOWING CASE MANAGEMENT TRACKS:

(a) Habeas Corpus – Cases brought under 28 U.S.C. § 2241 through § 2255.    (  )

(b) Social Security – Cases requesting review of a decision of the Secretary of Health and Human Services denying plaintiff Social Security Benefits.    (  )

(c) Arbitration – Cases required to be designated for arbitration under Local Civil Rule 53.2.    (  )

(d) Asbestos – Cases involving claims for personal injury or property damage from exposure to asbestos.    (  )

(e) Special Management – Cases that do not fall into tracks (a) through (d) that are commonly referred to as complex and that need special or intense management by the court. (See reverse side of this form for a detailed explanation of special management cases.)    (  )

(f) Standard Management – Cases that do not fall into any one of the other tracks.    (X)

| February 20, 2015 | _David G. C. Arnold_ Attorney-at-law | Plaintiffs |
|---|---|---|
| **Date** | **Attorney-at-law** | **Attorney for** |
| (610) 397-0722 | (610) 397-0723 | Davidgcarnold@aol.com |
| **Telephone** | **FAX Number** | **E-Mail Address** |

(Civ. 660) 10/02





$400. 00

# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| T.L., a Minor, by and Through | : | |
| His Parents and Guardians, K.L. and K.L., | : | **15**   ⊌ ⊌ ⊌ |
| And K.L. and K.L. in Their Own Right[1] | : | |
| | : | |
| Plaintiffs | : | Civil Action No. |
| | : | |
| V. | : | |
| | : | |
| Lower Merion School District | : | |
| 301 East Montgomery Avenue | : | |
| Ardmore, Pennsylvania 19003 | : | |
| | : | |
| Defendant | : | |

## CIVIL ACTION COMPLAINT

Plaintiffs, T.L., K.L., and K.L., by and through their undersigned counsel, now file the present Complaint in order to appeal the decision of Hearing Officer Linda M. Valentini of the Office of Dispute Resolution in accordance with 20 U.S.C. § 1415 and 29 U.S.C. § 794. In support of their claims T.L., K.L., and K.L. aver the following:

## PARTIES

1. Plaintiffs, K.L. and K.L., are the parents and guardians of Plaintiff, T.L., a minor.

2. K.L., K.L., and T.L. reside together in a home located in Gladwyne, Pennsylvania.

3. Defendant, Lower Merion School District, is the school district charged with the responsibility to provide both regular education services, and special education services to children residing in Lower Merion Township and Narberth Borough,

---

[1] T.L., K.L., and K.L.'.s true names and full address do not appear in this pleading pursuant to Rule 5.2 of the Federal Rules of Civil Procedure, and Rule 5.1.3 of the Rules of Civil Procedure of the United States District Court for the Eastern District of Pennsylvania. Said information will be made available to this Honorable Court upon request.

Pennsylvania. The District's Administrative Offices are located at 301 East Montgomery Avenue, Ardmore, Pennsylvania 19003.

4.  Lower Merion is the recipient of Federal financial assistance.

5.  Gladwyne, Pennsylvania, is located in Lower Merion Township.

## JURISDICTION

6.  This Honorable Court has jurisdiction over the claims set forth under 28 U.S.C. § 1331 and 20 U.S.C. § 1415.

## FACTUAL BACKGROUND

7.  T.L. is a 10-year-old student.

8.  T.L. started his educational career in kindergarten at Gladwyne Elementary School in the Fall of 2009.

9.  During kindergarten, it was discovered that T.L. experienced reading problems, and he was subsequently sent to Maureen Gold, a reading specialist.

10. Although she is a certified reading specialist, Ms. Gold is not Wilson certified, or a certified special education teacher.

11. Despite his reading challenges, Lower Merion did not offer T.L. reading services during the Summer of 2010.

12. K.L. and K.L. had T.L. privately tutored during the Summer of 2010 in reading and in math.

13. T.L. returned to Gladwyne Elementary School for first grade during the 2010-2011 school year.

2

14. Once again, T.L. demonstrated reading problems and also demonstrated problems with his writing.

15. T.L.'s challenges were severe enough that Lower Merion instituted an Action Plan to remediate his learning deficiencies.

16. Reading specialist Maureen Gold once again worked with T.L. during first grade.

17. Despite exhibiting learning problems, Lower Merion once again refused to offer T.L. any type of educational services during the Summer of 2011.

18. K.L. and K.L. once again had T.L. privately tutored during the Summer of 2011.

19. T.L. returned to Gladwyne Elementary School for second grade during the 2011-2012 school year.

20. T.L. once again experienced problems with reading and writing, and also began to experience problems with math.

21. T.L. was exhibiting behaviors and previously exhibited behaviors that impeded his learning and/or the learning of other students.

22. Lower Merion once again formulated an Action Plan in the Fall of 2011 to deal with T.L.'s learning challenges.

23. T.L. received both reading services and math services pursuant to the Action Plan.

24. T.L.'s reading services were delivered in part by Ms. Gold.

25. However, Lower Merion ultimately determined that T.L. was not responding to intervention and subsequently requested to evaluate him for special education services in November 2011.

26. T.L.'s parents consented to the special education evaluation.

3

27. Concerned about the time which had gone by, T.L.'s parents decided to secure their own private evaluation with Staci Heindel, Ph.D.

28. Doctor Heindel subsequently evaluated and tested T.L. in November and December 2011, and issued a report shortly thereafter.

29. K.L. and K.L. forwarded Dr. Heindel's report to Lower Merion to include in its Evaluation Report.

30. Lower Merion eventually finished its Evaluation Report and presented it to the K.L. and K.L. on February 3, 2012.

31. According to the Evaluation Report, T.L. was eligible for special education services under the categories of Specific Learning Disability and Other Health Impairment.

32. An IEP Meeting was conducted on February 10, 2012.

33. During the IEP Meeting, K.L., K.L., and Lower Merion discussed the Evaluation Report, and formulated an IEP.

34. The IEP created contained Goals in handwriting, reading, and math. It also contained twenty three (23) Specifically Designed Instructions, and provided for reading services and occupational therapy. However, the IEP failed to indicate that T.L.'s behavior impeded his learning or the learning of other students.

35. T.L.'s parent accepted the IEP on February 10, 2012.

36. The February 2012 IEP was subsequently amended without an IEP Meeting on March 28, 2012.

37. According to the Amended IEP, Extended School Year Services were added to the February 2012 IEP. Lower Merion offered T.L. a reading tutor for three (3) sessions

4

per week; each session would last forty five (45) minutes. However, the IEP failed to indicate that T.L.'s behavior impeded his learning or the learning of other students.

38. K.L. and K.L. did not see any changes in T.L. after Lower Merion implemented the IEP. In fact, T.L. became more frustrated after Lower Merion implemented the IEP, and his anxiety concerning writing went through the "roof."

39. With the situation regarding T.L.'s education and educational performance disintegrating, Lower Merion called another IEP Meeting for June 12, 2012, in order to once again amend the February 2012 IEP.

40. At the June 12, 2012, IEP Meeting, Lower Merion presented a revised IEP that contained Goals in handwriting, reading, writing, and math. The revised IEP also contained twenty four (24) Specifically Designed Instructions, and provided for reading services and occupational therapy. However, the IEP failed to indicate that T.L.'s behavior impeded his learning or the learning of other students.

41. Having watched their son struggle for three (3) years at Gladwyne Elementary, K.L. and K.L. rejected Lower Merion's revised IEP. K.L. and K.L. advised Lower Merion that they were going to place T.L. at AIM Academy, and that they would be seeking reimbursement for all educational expenses that they would incur.

42. T.L. subsequently started school at AIM Academy during the Summer of 2012 in AIM's Summer Program.

43. T.L. subsequently attended third grade at AIM Academy during the 2012-2013 school year, and fourth grade at AIM during the 2013-2014 school year. T.L. is presently attending fifth grade at AIM .

5

44. In addition to attending AIM Academy's Summer Program in 2012, T.L. also attended AIM's Summer Program in the Summer of 2013.

45. T.L. was privately tutored in Wilson during the Summer of 2014.

46. Notwithstanding the foregoing, K.L. and K.L, through their counsel, contacted Lower Merion in March of 2013 in order to determine what Extended School Year services were available for T.L. during the Summer of 2013, and what type of school placement was available for T.L. during the 2013-2014 school year.

47. Lower Merion responded to K.L. and K.L's request by issuing a Notice of Recommended Educational Placement, hereinafter referred to as a "NOREP," for very limited Extended School Year services for the Summer of 2013.

48. K.L. and K.L. rejected Lower Merion's NOREP, and responded that they wanted an IEP Meeting.

49. An IEP Meeting was subsequently scheduled, and an IEP Meeting was in fact held on May 14, 2013.

50. Lower Merion thereafter presented K.L. and K.L. with an IEP containing Goals in reading, writing, math, and self-regulation. The IEP also contained thirty one (31) Specifically Designed Instructions, and provided for reading services and occupational therapy. In terms of Extended School Year Services, the IEP provided for tutoring in reading and writing as well as classroom instruction in reading, writing, and mathematics. However, the IEP failed to indicate that T.L.'s behavior impeded his learning or the learning of other students.

51. K.L. and K.L. rejected the May 2013 IEP for a number of reasons.

6

52. However, despite rejecting the May 2013 IEP, K.L. and K.L. agreed that Lower Merion could Re-Evaluate T.L., and Lower Merion conducted a Re-Evaluation of T.L. during the late Spring and during the Summer of 2013.

53. Lower Merion presented K.L. and K.L. with its Re-Evaluation Report on August 23, 2013.

54. Additionally, Lower Merion and K.L. and K.L. met informally in August of 2013 to discuss programming for T.L.

55. Following said meeting, K.L. and K.L. once again put Lower Merion on notice that they were unilaterally placing T.L. back at AIM Academy, and that they would be seeking reimbursement for their expenses.

56. A formal IEP Meeting was then held on September 3, 2013, in order to discuss the August 2013 Re-Evaluation Report, and potential programming. Although a draft IEP was prepared, it was never offered to the K.L. and K.L. through a NOREP. Instead, Lower Merion requested that K.L. and K.L. allow it to conduct an additional Re-Evaluation in order to determine whether T.L.'s learning issues stemmed from autism.

57. K.L. and K.L. agreed to the Re-Evaluation, and the Re-Evaluation was conducted during the Fall of 2013.

58. Lower Merion presented K.L. and K.L. with its latest Re-Evaluation Report on November 15, 2013.

59. An IEP Meeting was subsequently held on December 4, 2013, at which time the November 2013 Re-Evaluation Report was discussed, and Lower Merion presented K.L. and K.L. with another IEP. The December 2013 IEP contained Goals in reading,

7

writing, math, and coping skills. The IEP also contained forty nine (49) Specifically Designed Instructions, and provided for reading services and occupational therapy. In terms of Extended School Year Services, the IEP provided for tutoring in reading and writing as well as classroom instruction in reading, writing, and mathematics.

60. K.L. and K.L. subsequently rejected the December 2013 IEP for a number of reasons.

61. On June 27, 2014, K.L. and K.L. filed for Due Process pursuant to the provisions of the Individuals with Disabilities Education Act, 20 U.S.C. § 1400 et. seq., hereinafter referred to as the "IDEA," and Section 504 of the Rehabilitation Act, 29 U.S.C. § 794, hereinafter referred to as "Section 504," and their controlling Federal Regulations and their controlling State Regulations.

62. In their Due Process Complaint, the K.L. and K.L. sought reimbursement for:

(a). All tuition and fees that have been paid to AIM Academy for T.L.'s education during the 2012-2013, and 2013-2014 school years;

(b). All tuition and fees that will be paid to AIM for T.L.'s education during the 2014-2015 school year;

(c). All tuition and fees that have been paid to AIM for T.L.'s Extended School Year program during the Summer of 2012 and during the Summer of 2013;

(d). All tuition and fees that has been paid for T.L.'s Extended School Year program during the Summer of 2014;

(e). All transportation costs expended in order to transport T.L. to AIM during the Summer of 2012 and during the Summer of 2013; and

(f). All transportation costs expended in order to transport T.L. to his Extended School Year program during the Summer of 2014.

8

63. T.L., K.L., and K.L.'s Due Process Case was tried over three (3) hearing days between August 2014 and October of 2014 before Hearing Officer Valentini.

64. In a decision entered on November 26, 2014, Hearing Officer Valentini denied T.L., K.L., and K.L. relief on all of the claims they asserted.

65. T.L., K.L., and K.L. have now exhausted their administrative remedies and are entitled to file this appeal with the United States District Court for the Eastern District of Pennsylvania pursuant to 20 U.S.C. § 1415 and 29 U.S.C. § 794.

## COUNT I

66. T.L., K.L. and K.L. incorporate herein by reference all of the prior Paragraphs in this Complaint.

67. Pursuant to the IDEA, T.L. was entitled to receive a Free Appropriate Public Education during the 2012-2013, 2013-2014, and 2014-2015 school years, as well as appropriate Extended School Year Services during the Summers of 2012, 2013, and 2014.

68. In order to fulfill its obligation to T.L., Lower Merion had to provide him with appropriate special education and related services.

69. Under controlling law, Lower Merion would have to pay for T.L.'s placement at AIM Academy, including the cost of any parent provided transportation, if T.L.'s placement at Lower Merion was inappropriate, if his placement at AIM was appropriate, and if the equities weighed in K.L. and K.L.'s favor.

70. Hearing Officer Valentini errantly concluded that Lower Merion provided T.L. with an appropriate placement and thereby complied with the dictates of the IDEA during

9

the 2012-2013, 2013-2014, and 2014-2015 school years, as well as complied with the

dictates of the IDEA during the Summers of 2012, 2013, and 2014.

71. Lower Merion failed to comply with the IDEA in that the evidence introduced at the

Due Process Hearing, and the applicable legal standards establish that programming

offered to T.L. during the relevant time period:

(a). At times failed to acknowledge the impact T.L.'s behaviors had on his ability

to function in the academic environment;

(b). At times were formulated without the benefit of a Functional Behavioral

Assessment;

(c). At times did not even contain a Positive Behavior Support Plan;

(d). At times did not contain an appropriate Positive Behavior Support Plan;

(e). Failed to take into account the findings and/or recommendations of an outside

expert/experts;

(f). Failed to properly address T.L.'s documented frustration/anxiety in dealing

with the school environment and learning process;

(g). Failed to properly address T.L.'s documented executive functioning

difficulties when dealing with the school environment and learning process;

(h). Failed to properly address T.L.'s negative reaction to his former placement at

Gladwyne Elementary School;

(i). At times failed to provide for appropriate counseling sessions;

(j). At times failed to document how long counseling sessions were supposed to

last;

10

(k). At times failed to appropriately describe behavioral strategies set forth in Positive Behavior Support Plans;

(l). Failed to properly address T.L.'s academic potential in light of the testing completed;

(m). Failed to provide that the Wilson Reading Program be used to educate T.L.;

(n). Failed to provide that school personnel be properly trained in the Wilson Reading Program;

(o). Failed to provide that properly trained Wilson instructors be used;

(p). Failed to mandate the use of an appropriate program to deal with T.L.'s documented encoding/spelling problems;

(q). Failed to mandate the use of an appropriate program to deal with T.L.'s documented writing challenges;

(r). Failed to mandate the use of an appropriate program to deal with T.L.'s documented math problems;

(s). Failed to give enough occupational therapy services;

(t). Failed to outline appropriate occupational therapy goals;

(u). Failed to provide a placement which provided for appropriate language based instruction throughout the entire school day in all subject areas by appropriately trained instructors;

(v). Failed to provide for appropriate sized classes in music, art, science, and social studies;

(w). At times failed to provide goals that were realistic and attainable in light of T.L.'s level of functioning;

11

(x). Failed to contain a goal which teaches, measures, and tracks T.L.'s ability to follow the conventions of writing and punctuation;

(y). Failed to contain a goal which teaches, measures, and tracks T.L.'s socialization skills;

(z). Failed to contain a goal which teaches, measures, and tracks T.L.'s ability to remain on task;

(aa). Failed to provide for any speech therapy, and/or outline appropriate speech therapy goals including improved socialization and/or improved writing production;

(bb). Failed to insure that T.L. was with an appropriate peer group when he was outside his regular education class;

(cc). Failed to provide Extended School Year services that were appropriate in scope and intensity in light of T.L.'s documented educational challenges;

(dd). Failed to provide Extended School Year services that included the provision of occupational therapy services;

(ee). Failed to provide Extended School Year services that included the provision of the Wilson Reading Program;

(ff). Failed to provide Extended School Year services that mandated the use of an appropriate program to deal with T.L.'s documented encoding/spelling problems;

(gg). Failed to provide Extended School Year services that mandated the use of an appropriate program to deal with T.L.'s documented writing challenges;

(hh). Failed to provide Extended School Year services that mandated the use of an appropriate program to deal with T.L.'s documented math problems;

(ii). At times failed to provide Extended School Year services that mandated the use of a Positive Behavior Support Plan;

(jj). At times failed to provide Extended School Year services that mandated the use of an appropriate Positive Behavior Support Plan;

(kk). Failed to provide Extended School Year services that mandated that school personnel be properly trained in the Wilson Reading Program;

(ll). Failed to provide Extended School Year services where properly trained Wilson instructors were to be used;

(mm). Failed to provide Extended School Year services that mandated appropriate counseling sessions;

(nn). Failed to provide Extended School Year services that mandated Speech Therapy; and/or

(oo). The tutoring services that comprise part of the Extended School Year services at issue are actually not a grant of Extended School Year services in that they were not mandated to take place in a Lower Merion facility and Lower Merion would not provide transportation to said tutoring sessions.

72. However, the evidence introduced at the Due Process Hearing, and the applicable legal standards, also establish that the educational program K.L. and K.L. provided for T.L. at AIM Academy was in fact appropriate in that it provided T.L. with appropriate educational instruction and necessary related services. T.L. also made appropriate progress in his AIM Program.

13

73. Moreover, the evidence introduced at the Due Process Hearing, and the applicable legal standards, establish that at all relevant times the equities in the present case weighed in favor of T.L., K.L., and K.L.

74. Additionally, Hearing Officer Valentini in the course of her decision failed to properly consider the expert opinion of Dr. Kelly Donohue, failed to give proper weight to the expert opinion of Dr. Kelly Donohue, failed to properly resolve conflicting evidence of record, improperly weighed the evidence of record and/or improperly ignored evidence, improperly admitted evidence into the record, improperly applied standards regarding Free Appropriate Public Education, and/or failed to properly apply IDEA standards regarding transportation.

WHEREFORE, T.L., K.L., and K.L. respectfully request that this Honorable Court:

(a). Grant them an award reimbursing them for all tuition and fees that has been paid to AIM Academy for T.L.'s education during the 2012-2013, and 2013-2014 school years;

(b). Grant them an award reimbursing them for all tuition and fees that will be paid to AIM for T.L.'s education during the 2014-2015 school year;

(c). Grant them an award reimbursing them for all tuition and fees that has been paid to AIM for T.L.'s Extended School Year program during the Summer of 2012 and during the Summer of 2013;

(d). Grant them an award reimbursing them for all tuition and fees that has been paid for T.L.'s Extended School Year program during the Summer of 2014;

(e). Grant them an award reimbursing them for all transportation costs expended in order to transport T.L. to AIM during the Summer of 2012 and during the Summer of 2013;

(f). Grant them an award reimbursing them for all transportation costs that has been expended in order to transport T.L. to his Extended School Year program during the Summer of 2014;

(g). Grant them an award for all attorneys' fees, court filing fees, and costs of litigation; and

(h). Grant them an award for whatever additional relief this Honorable Court deems appropriate.

## COUNT II

75. T.L., K.L. and K.L. incorporate herein by reference all of the prior Paragraphs in this Complaint.

76. Pursuant to the Section 504, T.L. was entitled to receive a Free Appropriate Public Education during the 2012-2013, 2013-2014, and 2014-2015 school years, as well as appropriate Extended School Year Services during the Summers of 2012, 2013, and 2014.

77. In order to fulfill its obligation to T.L., Lower Merion had to provide him with appropriate special education and related services.

78. Under controlling law, Lower Merion would have to pay for T.L.'s placement at AIM Academy, including the cost of any parent provided transportation, if T.L.'s placement at Lower Merion was inappropriate, if his placement at AIM was appropriate, and if the equities weighed in K.L. and K.L.'s favor.

15

79. Hearing Officer Valentini errantly concluded that Lower Merion provided T.L. with an appropriate placement and thereby complied with the dictates of Section 504 during the 2012-2013, 2013-2014, and 2014-2015 school years, as well as complied with the dictates of Section 504 during the Summers of 2012, 2013, and 2014.

80. Lower Merion failed to comply with Section 504 in that the evidence introduced at the Due Process Hearing, and the applicable legal standards establish that programming offered to T.L. during the relevant time period:

(a). At times failed to acknowledge the impact T.L.'s behaviors had on his ability to function in the academic environment;

(b). At times were formulated without the benefit of a Functional Behavioral Assessment;

(c). At times did not even contain a Positive Behavior Support Plan;

(d). At times did not contain an appropriate Positive Behavior Support Plan;

(e). Failed to take into account the findings and/or recommendations of an outside expert/experts;

(f). Failed to properly address T.L.' documented frustration/anxiety in dealing with the school environment and learning process;

(g). Failed to properly address T.L.'s documented executive functioning difficulties when dealing with the school environment and learning process;

(h). Failed to properly address T.L.'s negative reaction to his former placement at Gladwyne;

(i). At times failed to provide for appropriate counseling sessions;

16

(j). At times failed to document how long counseling sessions were supposed to last;

(k). At times failed to appropriately describe behavioral strategies set forth in Positive Behavior Support Plans;

(l). Failed to properly address T.L.'s academic potential in light of the testing completed;

(m). Failed to provide that the Wilson Reading Program be used to educate T.L.;

(n). Failed to provide that school personnel be properly trained in the Wilson Reading Program;

(o). Failed to provide that properly trained Wilson instructors be used;

(p). Failed to mandate the use of an appropriate program to deal with T.L.'s documented encoding/spelling problems;

(q). Failed to mandate the use of an appropriate program to deal with T.L.'s documented writing challenges;

(r). Failed to mandate the use of an appropriate program to deal with T.L.'s documented math problems;

(s). Failed to give enough occupational therapy services;

(t). Failed to outline appropriate occupational therapy goals;

(u). Failed to provide a placement which provided for appropriate language based instruction throughout the entire school day in all subject areas by appropriately trained instructors;

(v). Failed to provide for appropriate sized classes in music, art, science, and social studies;

17

(w). At times failed to provide goals that were realistic and attainable in light of T.L.'s level of functioning;

(x). Failed to contain a goal which teaches, measures, and tracks T.L.'s ability to follow the conventions of writing and punctuation;

(y). Failed to contain a goal which teaches, measures, and tracks T.L.'s socialization skills;

(z). Failed to contain a goal which teaches, measures, and tracks T.L.'s ability to remain on task;

(aa). Failed to provide for any speech therapy, and/or outline appropriate speech therapy goals including improved socialization and/or improved writing production;

(bb). Failed to insure that T.L. was with an appropriate peer group when he was outside his regular education class;

(cc). Failed to provide Extended School Year services that were appropriate in scope and intensity in light of T.L.'s documented educational challenges;

(dd). Failed to provide Extended School Year services that included the provision of occupational therapy services;

(ee). Failed to provide Extended School Year services that included the provision of the Wilson Reading Program;

(ff). Failed to provide Extended School Year services that mandated the use of an appropriate program to deal with T.L.'s documented encoding/spelling problems;

(gg). Failed to provide Extended School Year services that mandated the use of an appropriate program to deal with T.L.'s documented writing challenges;

18

(hh). Failed to provide Extended School Year services that mandated the use of an appropriate program to deal with T.L.'s documented math problems;

(ii). At times failed to provide Extended School Year services that mandated the use of a Positive Behavior Support Plan;

(jj). At times failed to provide Extended School Year services that mandated the use of an appropriate Positive Behavior Support Plan;

(kk). Failed to provide Extended School Year services that mandated that school personnel be properly trained in the Wilson Reading Program;

(ll). Failed to provide Extended School Year services where properly trained Wilson instructors were to be used;

(mm). Failed to provide Extended School Year services that mandated appropriate counseling sessions;

(nn). Failed to provide Extended School Year services that mandated Speech Therapy; and/or

(oo). The tutoring services that comprise part of the Extended School Year services at issue are actually not a grant of Extended School Year services in that they were not mandated to take place in a Lower Merion facility and Lower Merion would not provide transportation to said tutoring sessions.

81. However, the evidence introduced at the Due Process Hearing, and the applicable legal standards also establish that the educational program K.L. and K.L. provided for T.L. at AIM Academy was in fact appropriate in that it provided T.L. with appropriate educational instruction and necessary related services. T.L. also made appropriate progress in his AIM Program.

19

82. Moreover, the evidence introduced at the Due Process Hearing, and the applicable legal standards establish that at all relevant times the equities in the present case weighed in favor of T.L., K.L., and K.L.

83. Additionally, Hearing Officer Valentini in the course of her decision failed to properly consider the expert opinion of Dr. Kelly Donohue, failed to give proper weight to the expert opinion of Dr. Kelly Donohue, failed to properly resolve conflicting evidence of record, improperly weighed the evidence of record and/or improperly ignored evidence, improperly admitted evidence into the record, improperly applied standards regarding Free Appropriate Public Education, and/or failed to properly apply Section 504 standards regarding transportation.

WHEREFORE, T.L., K.L., and K.L. respectfully request that this Honorable Court:

(a). Grant them an award reimbursing them for all tuition and fees that has been paid to AIM Academy for T.L.'s education during the 2012-2013, and 2013-2014 school years;

(b). Grant them an award reimbursing them for all tuition and fees that will be paid to AIM for T.L.'s education during the 2014-2015 school year;

(c). Grant them an award reimbursing them for all tuition and fees that has been paid to AIM for T.L.'s Extended School Year program during the Summer of 2012 and during the Summer of 2013;

(d). Grant them an award reimbursing them for all tuition and fees that has been paid for T.L.'s Extended School Year program during the Summer of 2014;

(e). Grant tem an award reimbursing them for all transportation costs expended in order to transport T.L. to AIM during the Summer of 2012 and during the Summer of 2013;

(f). Grant them an award reimbursing them for all transportation costs that has been expended in order to transport T.L. to his Extended School Year program during the Summer of 2014;

(g). Grant them an award for all attorneys' fees, court filing fees, expert witness fees, and costs of litigation; and

(h). Grant them an award for whatever additional relief this Honorable Court deems appropriate.

Respectfully submitted,

David G. C. Arnold

Pennsylvania Attorney Identification No. 49819

Suite 106, 920 Matsonford Road
West Conshohocken, Pennsylvania 19428
(610) 397-0722

Attorney for Plaintiffs

Dated: February 20, 2015

21