**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| T.L., A MINOR, BY AND THROUGH HIS PARENTS, K.L. and K.L, | : : | |
| | : | CIVIL ACTION |
| Plaintiffs, | : | |
| | : | |
| v. | : | |
| | : | NO.  15-0885 |
| LOWER MERION SCHOOL DISTRICT, | : | |
| | : | |
| Defendant. | : | |

**MEMORANDUM**

BUCKWALTER, S. J.                                             November 17, 2015

Currently pending before the Court is the Motion by Defendant Lower Merion School District ("Defendant") to Exclude the Proposed Additional Evidence of Plaintiffs T.L., K.L., and K.L. ("Plaintiffs").  For the following reasons, the Motion is denied.

**I.      FACTUAL BACKGROUND**

Plaintiffs K.L. and K.L. are the parents and guardians of Plaintiff T.L., a minor.  (Compl. ¶ 1.)  Defendant Lower Merion School District encompasses the public schools for Gladwyne, Pennsylvania, where Plaintiffs reside.  (Id. ¶¶ 2–3.)

T.L., who was ten years old at the time the Complaint was filed, began kindergarten at Gladwyne Elementary School ("Gladwyne") in fall 2009.  (Id. ¶¶ 7–8.)  T.L. experienced reading problems and was sent to a reading specialist, but did not receive reading services during summer 2010.  (Id. ¶¶ 9, 11.)  Plaintiffs had T.L. privately tutored in reading and math during summer 2010.  (Id. ¶ 12.)  T.L. attended first grade at Gladwyne for the 2010–2011 school year, during which time he experienced reading and writing problems.  (Id. ¶¶ 13–14.)  Lower Merion

instituted an Action Plan for T.L., which included T.L. working with the reading specialist during the school year. (Id. ¶¶ 15–16.) T.L. did not receive educational services during summer 2011, so his parents had him privately tutored. (Id. ¶¶ 17–18.)

T.L. returned to Gladwyne for second grade during the 2011–2012 school year, during which time he continued experiencing problems with reading and writing, and also experienced problems with math. (Id. ¶¶ 19–20.) In addition, T.L. exhibited behaviors that impeded his learning and/or the learning of other students. (Id. ¶ 21.) Lower Merion formulated another Action Plan in the fall of 2011 to address T.L.'s learning challenges, pursuant to which he received reading and math services. (Id. ¶¶ 22–23.) Lower Merion determined that T.L. was not responding to the current interventions and requested that T.L. be evaluated for special education services in November 2011. (Id. ¶ 25.) Plaintiffs consented to the special education evaluation for T.L., which was presented to Plaintiffs on February 3, 2012. (Id. ¶¶ 26, 30.) Plaintiffs also obtained a private evaluation for T.L. with Staci Heindel, Ph.D., who evaluated and tested T.L. in November and December 2011, and who issued a report shortly thereafter. (Id. ¶¶ 27–28.) Plaintiffs forwarded Dr. Heindel's report to Lower Merion. (Id. ¶ 29.) Lower Merion's evaluation report found that T.L. was eligible for special education services in the categories of Specific Learning Disability and Other Health Impairment. (Id. ¶ 31.)

At an Individualized Education Program ("IEP") meeting on February 10, 2012, Plaintiffs and Lower Merion discussed the evaluation report and formulated an IEP for T.L. (Id. ¶¶ 32–33.) The IEP contained Goals for handwriting, reading, and math, as well as twenty-three Specifically Designated Instructions, and also provided for reading services and occupational therapy. (Id. ¶ 34.) The IEP did not specifically indicate that T.L.'s behavior impeded his learning or that of other students. (Id.) T.L.'s parents accepted the IEP on February 10, 2012.

(Id. ¶ 35.)  The IEP was amended on March 28, 2012 to include Extended School Year Services

("ESY") consisting of a reading tutor for three forty-five minute sessions per week.  (Id. ¶ 37.)

Plaintiffs assert that they did not see any changes in T.L. after the IEP was implemented,

and that T.L. became more frustrated and experienced increased anxiety.  (Id. ¶ 38.)  Lower

Merion scheduled an IEP meeting for June 12, 2012 in order to amend T.L.'s IEP.  (Id. ¶ 39.)  At

that meeting, Lower Merion presented a revised IEP that included Goals in handwriting, reading,

writing, and math, as well as twenty-four Specifically Designed Instructions, and also provided

for reading services and occupational therapy.  (Id. ¶ 40.)  The IEP again did not specifically

indicate that T.L.'s behavior impeded his learning or that of other students.  (Id.)

Plaintiffs rejected the revised IEP, advised Lower Merion that they were going to place

T.L. at AIM Academy, and stated that they would be seeking reimbursement for all educational

expenses incurred as a result of that placement.  (Id. ¶ 41.)  T.L. attended AIM Academy's

summer programs during summer 2012 and summer 2013, during the 2012–2013 and 2013–

2014 school years for third and fourth grade, and, at the time the Complaint was filed, T.L. was

attending AIM Academy for fifth grade.  (Id. ¶¶ 42–44.)  During summer 2014, T.L. was

privately tutored in Wilson reading.  (Id. ¶ 45.)

Through counsel, Plaintiffs contacted Lower Merion in March 2013 to determine what

ESY services were available for T.L. during summer 2013, and what type of school placement

was available for him during the 2013–2014 school year.  (Id. ¶ 46.)  Lower Merion responded

by issuing a Notice of Recommended Educational Placement ("NOREP") for what Plaintiffs

termed "very limited" ESY services for summer 2013.  (Id. ¶ 47.)  Plaintiffs rejected the NOREP

and responded that they wanted an IEP meeting, which was scheduled and subsequently held on

May 14, 2013.  (Id. ¶¶ 48–49.)

At the May 2013 IEP meeting, Lower Merion presented an IEP for T.L. that contained Goals in reading, writing, math, and self-regulation, as well as thirty-one Specifically Designed Instructions, and provided for reading services and occupational therapy. (Id. ¶ 50.) The IEP also provided for ESY services for tutoring in reading and writing, as well as classroom instruction in reading, writing, and mathematics. (Id.) The May 2013 IEP did not specifically indicate that T.L.'s behavior impeded his learning or that of other students. (Id.) Plaintiffs rejected the May 2013 IEP "for a number of reasons." (Id. ¶ 51.) Plaintiffs agreed that Lower Merion could re-evaluate T.L., which Lower Merion did during late spring and summer 2013. (Id. ¶ 52.)

Lower Merion presented the re-evaluation to Plaintiffs on August 23, 2013, and also met informally with Plaintiffs that month to discuss programming for T.L. (Id. ¶¶ 53–54.) After that meeting, Plaintiffs notified Lower Merion that they were unilaterally placing T.L. back at AIM Academy and that they would seek reimbursement for their expenses. (Id. ¶ 55.)

A formal IEP meeting was held on September 3, 2013, to discuss the August 2013 re-evaluation and potential programming. (Id. ¶ 56.) A draft IEP was prepared, but it was not offered to Plaintiffs through a NOREP. (Id.) Instead, Lower Merion requested that Plaintiffs allow it to conduct an additional re-evaluation in order to determine whether T.L.'s issues stemmed from autism. (Id.) Plaintiffs agreed to the re-evaluation, which was conducted during fall 2013. (Id. ¶ 57.) Lower Merion presented the re-evaluation report on November 15, 2013. (Id. ¶ 58.)

An IEP meeting was held on December 4, 2013, during which the November 2013 re-evaluation report was discussed and Lower Merion presented Plaintiffs with another IEP. (Id. ¶ 59.) The December 2013 IEP contained Goals in reading, writing, math, and coping skills, as

well as forty-nine Specifically Designed Instructions, and provided for tutoring in reading and

writing, as well as classroom instruction in reading, writing, and mathematics.  (Id.)  Plaintiffs

rejected the December 2013 IEP "for a number of reasons."  (Id. ¶ 60.)

On June 27, 2014, Plaintiffs filed a Due Process Complaint pursuant to the Individuals

with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1400 et. seq., and Section 504 of the

Rehabilitation Act, 29 U.S.C. § 794 ("Section 504").  (Id. ¶ 61.)  In the Due Process Complaint,

Plaintiffs sought reimbursement for the following:

> (a)  All tuition and fees paid to AIM Academy for T.L.'s education during the 2012–2013 and 2013–2014 school years;
> (b)  All tuition and fees that would be paid to AIM Academy for T.L.'s education during the 2014–2015 school year;
> (c)  All tuition and fees paid to AIM Academy for T.L.'s Extended School Year program during Summer 2012 and Summer 2013;
> (d)  All tuition and fees paid to AIM Academy for T.L.'s Extended School Year program for Summer 2014;
> (e)  All transportation costs expended in order to transport T.L. to AIM Academy during Summer 2012 and Summer 2013;
> (f)  All transportation costs expended in order to transport T.L. to AIM Academy during Summer 2014.

(Id. ¶ 62.)  Plaintiffs' Due Process case was tried before Hearing Officer Valentini over three

hearing days between August 2014 and October 2014.  (Id. ¶ 63.)  In a decision entered on

November 26, 2014, Hearing Officer Valentini denied Plaintiffs the relief they requested on all

claims asserted.  (Id. ¶ 64.)  Specifically, Hearing Officer Valentini reasoned that "[i]n light of all

the testimonial and documentary evidence before me I conclude that the District offered a free

appropriate public education to [T.L.] and therefore the Parents' claims must fail.  As the District

has offered [T.L.] an appropriate program and placement in the least restrictive environment it is

not necessary to address the appropriateness of the Parents' unilateral placement or the equities

in the matter."[1]  (Def.'s Answer, Ex. A., Decision on Due Process Hearing 29.)  Plaintiffs have

exhausted their administrative remedies and now appeal the decision of Hearing Officer

Valentini to this Court pursuant to 20 U.S.C. § 1415 and 29 U.S.C. § 794.  (Compl. ¶ 65.)

Plaintiffs filed a Complaint in this case on February 20, 2015.  Defendant filed an

Answer with Affirmative Defenses on April 28, 2015.  On June 6, 2015, Plaintiffs filed a Notice

to the Clerk, indicating their intent to seek to introduce additional evidence in this case pursuant

to 20 U.S.C. § 1415(i)(2)(C), and attaching Plaintiffs' Proposed Additional Exhibit 1 (Student

Program & Progress Report from AIM Academy for the First Trimester of the 2014–2015 school

year) and Plaintiffs' Proposed Additional Exhibit 2 (Student Program & Progress Report from

AIM Academy for the Second Trimester of the 2014–2015 school year).  Defendant moved to

exclude Plaintiffs' Proposed Additional Evidence on June 30, 2015, and Plaintiff responded to

that Motion on July 17, 2015.

## II.    STANDARD OF REVIEW

In a civil action brought in district court following a due process hearing pursuant to the

IDEA, the district court "shall hear additional evidence at the request of a party."  20 U.S.C. §

1415(i)(2)(C)(ii).  The Third Circuit Court of Appeals has stated that "a district court first must

evaluate a party's proffered evidence before deciding to exclude it."  Susan N. v. Wilson Sch.

Dist., 70 F.3d 751, 759 (3d Cir. 1995).  "While a district court appropriately may exclude

additional evidence, a court must exercise particularized discretion in its rulings so that it will

consider evidence relevant, non-cumulative and useful in determining whether Congress' goal

has been reached for the child involved."  Id. at 760.  "[I]n determining whether to admit the

proffered additional evidence," the question for a district court is "would the evidence assist the

---

[1] The Court will more thoroughly discuss Hearing Officer Valentini's written decision in
connection with a forthcoming Opinion addressing Plaintiffs' pending Motion for Judgment on
the Administrative Record.

court in ascertaining whether Congress' goal has been and is being reached for the child involved." Id.

In accordance with United States Supreme Court and Third Circuit precedent, tuition reimbursement for a private school placement may be awarded if (1) the student's IEP at the public school was inappropriate, (2) the private placement was proper, and (3) equitable considerations weigh in favor of tuition reimbursement.[2]  See Florence Cty. Sch. Dist. Four v. Carter, 510 U.S. 7, 15 (1993) (citing Sch. Comm. of Town of Burlington, Mass. v. Dep't of Educ. of Mass., 471 U.S. 359, 374 (1985)); Lauren W. ex rel. Jean W. v. DeFlaminis, 480 F.3d 259, 276 (3d Cir. 2007) (citing Carter, 510 U.S. at 15); see also Burlington, 471 U.S. at 370 ("In a case where a court determines that a private placement desired by the parents was proper . . . and that an IEP calling for placement in a public school was inappropriate, it seems clear beyond cavil that 'appropriate' relief would include a prospective injunction directing the school officials to develop and implement at public expense an IEP placing the child in a private school.").  "A private placement is proper if it (1) is appropriate, i.e., it provides significant learning and confers meaningful benefit, and (2) is provided in the least restrictive educational environment." Lauren W., 480 F.3d at 276 (internal quotation marks and citation omitted).

The Third Circuit has also held that, as to the "taking of evidence on judicial review that was not before the school district when it made its initial IDEA placement decisions[,] . . . such after-acquired evidence, such as information received through the experience of an alternative placement, should be used by courts *only in assessing the reasonableness of the district's initial decisions regarding a particular IEP or the provision of special education services at all*."

---

[2] The Court does not, at this juncture, address the merits of the Hearing Officer's decision. Nonetheless, for the reasons discussed below, the Court must address the standard under which the Hearing Officer's decision will be reviewed in order to determine whether admission of the proposed additional evidence is proper.

Susan N., 70 F.3d at 762 (emphasis added).  The Third Circuit further stressed that "[c]ourts

must be vigilant to heed [a prior Third Circuit] warning that '[n]either the statute nor reason

countenance 'Monday Morning Quarterbacking' in evaluating the appropriateness of a child's

placement.'"  Id. (quoting Fuhrmann ex rel. Fuhrmann v. E. Hanover Bd. of Educ., 993 F.2d

1031, 1040 (3d Cir. 1993)).  "Evidence of a child's progress—or lack thereof—in an alternative

placement may be relevant to the court's determination whether a school district's IEP was

appropriate at the time it was drafted."  L.G. ex rel. E.G. v. Fair Lawn Bd. of Educ., 486 F.

App'x 967, 975 (3d Cir. 2012) (citing Susan N., 70 F.3d at 762).

## III.   DISCUSSION

In this case, Plaintiffs request that this Court admit additional evidence regarding T.L.'s

progress and programming at AIM Academy during part of the 2014–2015 school year.  As

discussed above, Third Circuit precedent dictates that this type of after-acquired evidence, which

was not available to the Hearing Officer at the Due Process Hearing, may only be used to assess

the reasonableness of Defendant's decisions regarding T.L.'s IEPs and/or the provision of special

education services, in order to aid this Court's determination of "whether a school district's IEP

was appropriate at the time it was drafted."  L.G., 486 F. App'x at 975 (citing Susan N., 70 F.3d

at 762).  Thus, following a determination that Plaintiffs' proposed additional evidence is

relevant, non-cumulative, and useful, it may only be used for purposes of the pending Motion for

Judgment on the Administrative Record in assessing the first prong of the Burlington/Carter test,

*i.e.*, whether T.L.'s public school IEPs were appropriate.

Defendant asserts that because the Hearing Officer did not move past the first prong in

reaching her decision, "the only relevant legal analysis to this Court in this consideration for

what additional evidence is relevant, non-cumulative and useful on appeal is that evidence which

helps this Court to decide whether the Hearing Officer correctly determined that the District's

IEPs provided [a free appropriate public education ("FAPE")] for the Student at the time they

were created."  (Def.'s Mem. Supp. Mot. Exclude 4–5.)[3]  Defendant moves to exclude Plaintiffs'

proposed additional evidence because "they were documents created after the IEPs were created,

and [after the] Hearing Officer's Decision was issued [,] and are cumulative and not relevant, or

useful to determining the issues on appeal."  (Def.'s Mem. Supp. Mot. Exclude 2.)  Plaintiffs

respond by arguing that the "Proposed Additional Exhibits" are relevant, non-cumulative, and

helpful to a tuition reimbursement determination, and are particularly helpful in considering the

second prong of the Burlington/Carter analysis—whether the private placement was appropriate.

(Pls.' Resp. Opp'n Mot. Exclude 5–8.)  The Court will address each requirement for the

admission of additional evidence individually.

## A.  **Whether the Evidence is Relevant**

Defendant argues that progress reports from late fall through late winter/early spring of

the 2014–2015 school year are irrelevant to the issues before this Court.  (Def.'s Mem. Supp.

Mot. Exclude 6.)  Defendant also argues that, because the proposed additional evidence was

acquired after the Due Process Hearing, its relevance depends on how probative it is of the

reasonableness of T.L.'s IEP at the time it was offered.  (Id.)  According to Defendant, the

proposed additional evidence is not at all probative of that inquiry because it was not in existence

when the school district held IEP meetings in February 2012, May 2013, September 2013, and

December 2013, and its inclusion in the record for this Court's review would result in second-

guessing the school district's decisions with information it did not have access to when it made

those decisions.  (Id.)  Plaintiffs respond that the proposed additional evidence is relevant to

---

[3] Defendant did not number the pages of its Memorandum in Support of the Motion to Exclude
Plaintiffs' Proposed Additional Evidence, so the Court has supplied the numbering.

proving a tuition reimbursement claim because "there is no better evidence to determine whether

the AIM placement was appropriate during the time period at issue than to look at T.L.'s actual

academic performance, [which] is exactly what the Proposed Additional Exhibits demonstrate."

(Pls.' Resp. Opp'n Mot. Exclude 5.)  For the reasons described below, neither Defendant's

arguments for excluding the proposed additional evidence nor Plaintiffs' arguments for including

it are persuasive.

Defendant correctly highlights the limitations placed on this type of after-acquired

evidence, as set forth in Susan N. and L.G., which the Court will take into account in deciding

the pending Motion for Judgment on the Administrative Record.  Nonetheless, Defendant's

argument—that Plaintiffs' proposed additional evidence is not probative of the reasonableness of

the school district's decisions—ignores the fact that the Third Circuit believed that this type of

evidence could be relevant.  Had the Third Circuit believed otherwise, the limitations on using

such evidence and the cautions against second-guessing the school district would have been

unnecessary, and the Third Circuit would have simply held that such evidence should always be

excluded.  In this case, the proposed additional evidence showing T.L.'s progress in fifth grade is

relevant because the December 2013 IEP was intended to cover part of the 2014–2015 school

year.  Indeed, Defendant's argument that the proposed additional evidence is cumulative actually

supports a finding that the evidence is relevant to evaluating the reasonableness and

appropriateness of the various IEPs.  (See Def.'s Mem. Supp. Mot. Exclude 7 n.1 ("the

December 2013 IEP covered both the 2013–2014 and 2014–2015 school years from December 4,

2013 through December 4, 2014.").)

On the other hand, Plaintiffs' argument that the evidence is relevant to determining

whether the AIM Academy placement was appropriate is also misplaced.  As previously stated,

after-acquired evidence may only be used in addressing the first prong of the <u>Burlington</u>/<u>Carter</u>

test—the appropriateness of the public school's programming and decisions—in order to

evaluate the reasonableness of the public school's decisions about T.L.'s educational

programming at the time those decisions were made.[4]   See <u>Susan N.</u>, 70 F.3d at 762; <u>see also</u>

<u>L.G.</u>, 486 F. App'x at 975 (citing <u>Susan N.</u>, 70 F.3d at 762).

In this case, the proposed additional evidence is relevant to the first prong of the

<u>Burlington</u>/<u>Carter</u> analysis that this Court must undertake in deciding the pending Motion for

Judgment on the Administrative Record, although not for the reasons Plaintiffs argued.

Nonetheless, evidence of T.L.'s programming and progress at AIM Academy during fifth grade

are relevant as a point of comparison for assessing the reasonableness of the IEPs when they

were developed.  The Court finds, therefore, that Plaintiffs' additional proposed evidence is

relevant to the limited inquiry of whether the district's decisions regarding T.L.'s education were

reasonable when made and whether the IEPs were appropriate.

## B.  <u>Whether the Evidence is Non-Cumulative</u>

According to Defendant, Plaintiffs' proposed additional evidence is cumulative because

the record already includes the Student Program and Progress reports from AIM Academy for

the 2012–2013 and 2013–2014 school years, which describe the programming and T.L.'s

progress during the time when the school district's IEPs for the 2012–2013, 2013–2014, and

2014–2015 school years were being created.  (Def.'s Mem. Supp. Mot. Exclude 7.)  Defendant

also argues that the 2014–2015 school year documents from AIM Academy are cumulative in

---

[4] Plaintiffs argue that the case law cited in Defendant's Memorandum of Law is inapplicable
because Plaintiffs do not want to use after-acquired evidence to establish their claim under the
first prong of the <u>Burlington</u>/<u>Carter</u> test, but rather the second prong.  (Pls.' Resp. Opp'n Mot.
Exclude 5.)  But the holdings in <u>Susan N.</u> and <u>L.G.</u> regarding how after-acquired evidence may
be used apply regardless of the manner in which Plaintiffs wish to use that evidence.  As stated
above, the Court finds that the exhibits comprising the proposed additional evidence are relevant,
but not for the reasons and purpose Plaintiffs advocate.

light of the existing record evidence about AIM Academy programming, and because the other

school year records from AIM Academy provide ample evidence regarding such programming.

(Id.)

Plaintiffs respond by arguing that "the Proposed Additional Exhibits cannot be

cumulative of evidence of record because the program and progress reported on had not

occurred" at the time of the Due Process Hearing, and "therefore, the information contained

therein could not appear in any record or testimony introduced at the Due Process Hearing."

(Pls.' Resp. Opp'n  Mot. Exclude 6.)

Because the 2014–2015 school year documents comprising the proposed additional

evidence cover time periods in T.L.'s education that occurred subsequent to the Due Process

Hearing, they are not cumulative of other academic records from other school years.  Defendant

maintains that the records are cumulative because, based on the timing of IEP reviews, "the

December 2013 IEP covered both the 2013–2014 and 2014–2015 school years from December 4,

2013 through December 4, 2014."  (Def.'s Mem. Supp. Mot. Exclude at 7 n.1.)  That fact,

however, does not render the 2014–2015 school year records cumulative of T.L.'s records for

prior school years that were covered by the same IEP.  While the record already contains

evidence of the type of programming T.L. was receiving at AIM Academy, the evidence related

to the 2014–2015 school year programming, as well as T.L.'s progress for the first and second

trimester of the 2014–2015 school year, is supplemental rather than cumulative.  Accordingly,

the Court finds that Plaintiffs' proposed additional evidence is non-cumulative.


### C.  Whether the Evidence is Useful

Defendant argues that the proposed additional evidence is not useful because it was unavailable at the time of the Due Process Hearing.  (Def.'s Mem. Supp. Mot. Exclude 6.) According to Defendant, "in light of the extensive record presently before the Court and the limited relevancy and subjective nature of [the] program and progress reports from the 2014-2015 school years, such evidence would not be helpful to this Court in determining whether the Hearing Officer erred in her analysis."  (Id. at 6–7.)

Plaintiffs argue that "the Proposed Additional Exhibits should be admitted because they are helpful in determining whether K.L. and K.L. should be reimbursed for T.L.'s tuition at AIM Academy" and that "there is no better indication as to whether AIM appropriately educated T.L. then [sic] to look at the progress he made in its program while he attended."  (Pls.' Resp. Opp'n Mot. Exclude 7–8.)  In addition, Plaintiffs point out that Hearing Officer Valentini admitted similar records for prior school years, and thus "the same records for the 2014–2015 school year deserve consideration as well."  (Id. at 8.)

Logically, Plaintiffs' proposed additional evidence is potentially useful, as prior Third Circuit precedent specifically discusses whether this type of after-acquired evidence can be admitted.  In this case, the records may be useful in evaluating the reasonableness of the December 2013 IEP.  Although Defendant argues that the proposed evidence is not "helpful" because it would have limited relevancy, the mere fact that the evidence is only relevant to a limited inquiry does not render it entirely useless to the Court's analysis.  As discussed above in connection with the relevance of Plaintiffs' proposed additional evidence, Plaintiffs' argument that the evidence will be useful to an evaluation of the appropriateness of the AIM placement conflicts with Third Circuit case law and is therefore not persuasive.  Even so, the Court finds that the proposed additional evidence does have some usefulness in evaluating the

13

reasonableness of the public school's decisions about T.L.'s education at the time those decisions were made.

### D. **Defendant's Additional Arguments**

Defendant further objects to the proposed additional evidence because the school district "has not had an opportunity to cross examine the persons who made the statements or compiled the documents." (Def.'s Mem. Supp. Mot. Exclude 7.)  Defendant expresses concern that the evidence could be misconstrued or misinterpreted, resulting in prejudice to Defendant because it "contains primarily subjective commentary and assessment" and "[n]either the [school district] nor this Court know the context or circumstances around which the Additional Evidence was based . . . ." (Id. at 7–8.)  Plaintiffs respond that Defendant's argument is "somewhat questionable" because "[s]imilar evidence relating to different time periods, i.e. academic records not covering the 2014–2015 school year, were introduced [by Plaintiffs] at the Due Process Hearing," but despite that fact, Defendant "never called anyone from AIM Academy to cross-examine them regarding the Exhibits." (Pls.' Resp. Opp'n Mot. Exclude 7.)

Given the relatively limited manner in which the proposed additional evidence may be used, and the fact that the exhibits are similar to academic records already in the record and about which Defendant did not conduct cross examination at the Due Process Hearing, Defendant's argument regarding cross examination is not a basis for excluding the evidence. Despite Defendant's concern that the exhibits do not include the date on which they were prepared, it is clear that the "context" and "circumstances" of the exhibits are that they essentially report cards for T.L. during the first and second trimesters of the 2014–2015 school year, and that they detail his programming and progress at AIM Academy for part of that school year.

Finally, Defendant argues that "[t]he documents are undated and contain stamping over the text at the bottom of each page of the proffered exhibits, which makes it even more different [sic] to analyze and interpret the evidence."  Plaintiffs have offered to provide copies without the document footer, (Pls.' Resp. Opp'n Mot. Exclude 7), but this would be largely unnecessary because the Court is able to determine that the text underneath the footer is the street address, telephone number, and fax number for AIM Academy.  (See, e.g., Docket No. 9, Notice to Clerk, Ex. 2, at 8.)  Accordingly, Defendant's argument for exclusion of the proposed additional evidence on that basis is not persuasive.

## IV.    CONCLUSION

In light of the foregoing, the Court finds that Plaintiffs' proposed additional evidence, consisting of T.L.'s Student Program & Progress Reports from AIM Academy for the first and second trimester of the 2014–2015 school year, is relevant, non-cumulative, and useful to an analysis of the reasonableness of the public school's decisions regarding T.L.'s IEPs at the time they were made.  Accordingly, Defendant's Motion to Exclude Plaintiffs' Proposed Additional Evidence is denied.

An appropriate Order follows.